United States District Court
Southern District of Texas
**ENTERED**
September 17, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Quincy H.,[1] | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-25-1799 |
| | § | |
| Frank J. Bisignano,[2] | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Quincy H. appeals the Social Security Administration Commissioner's final decision partially denying his application for Social Security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 10; and the Commissioner's Response and Cross Motion for Summary Judgment, ECF No. 12. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF Nos. 5, 7. Plaintiff's Motion for Summary Judgment is **DENIED**. The Commissioner's Motion for Summary Judgment is **GRANTED**. The Commissioner's final decision is **AFFIRMED**.

***1. Procedural Posture***

On February 10, 2022, Quincy filed applications for disability insurance benefits, under Title II of the Social Security

[1] In light of guidance received from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which states that there are significant privacy concerns in social security cases, the court refers to the Plaintiff only by their first name and last initial.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano is substituted as the defendant in this suit.

Act, and supplemental social security income benefits, under Title XVI of the Social Security Act. Tr. 101. Quincy alleged that his disability began on January 5, 2021, due to spina bifida, herniated discs, high blood pressure, irregular heartbeat, sinus issues, and several impairments on his right side, including pain, atrophy, and problems with his grip and muscle control. Tr. 101.

The SSA denied both of Quincy's applications at the initial level on October 6, 2022, and upon reconsideration on April 6, 2023. Tr. 145–48, 155–58, 170–72, 178–80. Administrative Law Judge (ALJ) Michelle Whetsel held a hearing on October 18, 2023. Tr. 60–100. Quincy's counsel was present at the hearing. Tr. 62. Quincy testified about his education, work history, and medical conditions. Tr. 67–89.

Quincy testified that he completed the eleventh grade but that he did not graduate from high school. Tr. 92. He did, however, obtain a GED. *Id.* He also testified that he had graduated as a heating, ventilation, and air conditioning (HVAC) technician. Tr. 68.

As to his work history, Quincy testified that he had received income in the year prior for his work as a self-employed repairman. Tr. 67. He testified that he performed repairs for people who called him, which occurred on a random basis, Tr. 68, and that he primarily worked at individual residences. Tr. 91. His repairs mostly involved air conditioners, but he had also repaired a refrigerator. Tr. 69. While performing repairs, Quincy testified that he could not lift much, so he had people assist him with items that he could not lift. Tr. 69. Prior to that, he held various jobs in maintenance, plumbing, and HVAC services. Tr. 69–72. He testified that he did some lifting in his previous jobs but that he had experienced pain when doing so. Tr. 70. He had also worked at a hotel for about a month in 2021, but that work was not maintenance related. Tr. 80.

The Vocational Expert (VE) classified Quincy's past work as a self-employed individual as a house repairer, which Quincy performed at the medium exertional level. Tr. 91. A house repairer has a specific vocational preparation (SVP) of seven. *Id.* The VE also classified Quincy's past work in commercial repairs as a maintenance-repairer, which Quincy performed at the medium exertional level. *Id.* A maintenance-repairer has an SVP of seven. *Id.*

As to his medical conditions, Quincy testified that he had spine and back impairments. Tr. 68. He also testified that he experienced pain down his right side and into his legs, which caused him to have trouble standing, walking, and balancing. Tr. 72–73. He testified that he could sit for only a few minutes before needing to stand, and that he could only walk a few steps before needing a break. Tr. 87–88. He also walked with a cane for about six months after his December surgery. Tr. 74. He testified that he experienced constant paint while sitting. Tr. 73. Quincy also explained that his cardiologist told him to limit his lifting because of his heart condition. Tr. 73–74. He testified that he discovered his heart condition because he had experienced shortness of breath for about a month. Tr. 75. He explained that his breathing problems led his doctors to perform an EKG and to prescribe him medications and a LifeVest. Tr. 76. He also received a blood test, and he testified that the results of the EKG and the blood test prevented him from receiving a scheduled neck surgery. Tr. 76–77. He testified that he was still wearing a LifeVest at the hearing and that he had received medications for his heart condition. Tr. 84. He explained that his doctor told him to continue wearing the Life Vest until his ejection fraction decreased. Tr. 82. Quincy also testified that he had atrophy in his right arm, limiting his ability to reach and causing grip issues in his right hand. Tr. 77.

Quincy testified that he lived in a two-story home with his two children, aged eleven and thirteen. Tr. 84–85. He testified that he sometimes has difficulty performing his own personal hygiene. Tr. 85. He stated that he performed chores, prepared meals for the household, and shopped for groceries, as his wife had recently passed away. Tr. 85–87. Quincy also testified that on a regular day, he would wake up his children and prepare them for school, then he would watch TV before picking up his children and spending time with them. Tr. 89.

After Quincy's testimony, the ALJ presented a series of hypotheticals to the VE. She asked the VE first to assume a person of the same age, education, and work experience as Quincy; the person is limited to work at the light exertional level; the person can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; the person can occasionally balance, stoop, kneel, crouch, and crawl; the person should avoid even moderate exposure to fumes, dusts, odors, gasses, and poor ventilation; the person can occasionally push, pull, and operate foot controls bilaterally and frequently handle and finger bilaterally; the person can occasionally reach in all directions, including overhead with the right upper extremity. Tr. 92–93.

According to the VE, such a person could not perform Quincy's past work. Tr. 93. Additionally, the VE stated that such a person could obtain work available in the national economy as a furniture rental consultant, a shipping and receiving weigher, and a school bus monitor. Tr. 93. Each of those jobs is a light exertion job requiring SVP two, unskilled work. Tr. 93–94.

The ALJ then asked the VE to assume the same hypothetical claimant but that the person could occasionally reach in all directions, including overhead bilaterally, as opposed to limiting that to the right upper extremity. The VE testified that the person would still be able to perform the three jobs that the VE identified.

Tr. 94. The ALJ also asked the VE to assume the same hypothetical claimant but that the person could perform work at no greater than a sedentary exertional level. According to the VE, the person would be capable of working as a call out operator and a surveillance system monitor, but such positions did not exist in significant numbers in the national economy. Tr. 95.

Quincy's counsel cross-examined the VE. Tr. 97. Quincy's counsel asked the VE to assume the first hypothetical that the ALJ provided with a modification that the person would need to alternate between sitting and standing every thirty minutes. *Id.* The VE testified that light work requires the ability to stand for six hours and sit for two hours. *Id.* The VE also explained that the person's regular alternation between sitting and standing would contribute to their time-off-task percentage, which would be limited to ten percent. *Id.*

After the testimony concluded, the ALJ informed Quincy's counsel that he had thirty days to submit Quincy's medical records pertaining to the increase in his ejection fraction testing scores, as the medical documentation was not in the record. Tr. 98–99.

The ALJ issued her decision on December 1, 2023, finding that Quincy was not disabled from January 5, 2021 through May 19, 2023, but that he was disabled from May 19, 2023 through the decision. Tr. 35–37, 51–52. Quincy requested review of the ALJ's decision, which the Appeals Council denied on December 16, 2024. Tr. 1. Quincy timely filed a complaint and an application to proceed in forma pauperis in federal court on April 18, 2025. *See* ECF No. 1.

### *2. Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental

income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

This court's review of the ALJ's disability determination is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). The court "ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Id.* "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence

supports the ALJ's decision, but it may not reweigh the evidence or substitute its judgment. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### *3. Analysis*

#### *A. Step One*

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. *Id.*

The ALJ found that Quincy has not engaged in substantial gainful activity since the alleged onset date. Tr. 41. The ALJ's step-one finding is supported by substantial evidence, and Quincy does not dispute this finding.

#### *B. Step Two*

At step two, the ALJ determines whether any of the claimant's impairments, or any combination thereof, is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii) (citing 20 C.F.R. § 404.1509), 416.920(a)(4)(ii) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Keel*, 986 F.3d at 555 (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Quincy had the following medically determinable severe impairments: "osteoarthritis; degenerative disc disease of the lumbar and cervical spine/lumbar stenosis[;] and congestive heart failure." Tr. 41. Quincy does not dispute the ALJ's step-two findings.

***C. Step Three***

At step three, the ALJ determines if any severe impairment meets or equals a listed impairment (Listing) in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Listings describe impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). The claimant will be found disabled if the claimant's impairments meet or equal all of the specified criteria of a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Whitehead*, 820 F.3d at 781. The claimant has the burden of establishing that their impairments match the Listing. *Whitehead*, 820 F.3d at 781.

The ALJ found that Quincy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 41. The ALJ considered Listing Sections 1.15, 1.16, and 4.02. Tr. 41–42.

The ALJ determined that Quincy's musculoskeletal impairments did not meet or equal the criteria set forth in Listing Sections 1.15 or 1.16. Tr. 41–42. Quincy's medical documentation did not reflect the medical need for an assistive walking device, such as a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device that would require the use of both hands. Tr. 41. The record also did not show that Quincy had experienced nonradicular neurologic signs; instead, the record reflected that he had normal sensation and reflexes. Tr. 41–42,

44 (observing that Quincy's physical examinations were free from serious clinical defects from the alleged onset date through May 2023).

The ALJ determined that Quincy's congestive heart failure did not meet or equal the criteria set forth in Listing Section 4.02 (chronic heart failure). Although Quincy's medical documentation showed that he exhibited an ejection fraction of thirty percent or less, the record did not show that he met the remaining criteria in the Listing. Tr. 42. The ALJ found that the record did not show that Quincy underwent an exercise tolerance test nor that a treating source concluded that the test would have presented a significant risk for the claimant. *Id.* The ALJ also determined that the record did not establish that Quincy experienced three or more separate episodes of acute congestive heart failure. *Id.*

The ALJ's step-three determination is supported by substantial evidence and comports with the law.

Quincy does not mention the Listings or point to evidence that shows that he meets any particular Listing section. Quincy has the burden of establishing that his impairment or combination of impairments meets all of the specified medical criteria of a Listing impairment. *Russo v. Saul*, 805 F. App'x 269, 273 (5th Cir. 2020) (per curiam). "' [A]n impairment that manifests only some of those criteria, no matter how severely, does not qualify' as a disability." *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Having presented no evidence or argument on the step-three finding, Quincy cannot show that the ALJ erred.

### *D. Residual Functional Capacity*

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e) (citing 20 C.F.R. § 404.1545), 416.920(e) (citing 20

C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)). The RFC determination is based on "the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Id.* (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c).

The ALJ made two RFC determinations: the first was based on the period from the alleged onset date through May 19, 2023, and the second was based on the period of May 19, 2023 through the ALJ's decision. *See* Tr. 42–46. The court focuses on the first RFC determination because the ALJ determined that Quincy was disabled based on the second RFC determination. As such, it does not appear that Quincy disputes the ALJ's second RFC determination.

From the alleged onset date through May 19, 2023, the ALJ found that Quincy had the RFC to

> perform light work . . ., except the claimant could occasionally climb ramps and stairs, but should have never climbed ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch, and crawl. The claimant should have avoided all exposure to unprotected heights and wet, slippery, or uneven surfaces. He should have avoided even moderate exposure to fumes, dusts, odors, gases, and poor ventilation. He could occasionally reach in all directions including overhead, bilaterally. He could frequently handle and finger, bilaterally. The claimant could occasionally push, pull, or operate foot controls, bilaterally.

Tr. 43.

In making this determination, the ALJ considered the entire record, including Quincy's allegations about his impairments, his medical records, and his medical providers' statements and opinions.

As for Quincy's allegations about his impairments, the ALJ's summary is consistent with Quincy's hearing testimony, summarized above. Essentially, Quincy maintains that he is severely limited by his physical conditions, specifically his constant pain stemming from his back and spine impairments. Tr. 43. He states that he would experience constant pain that radiated down his lower extremities, which limited his ability to stand, walk, and balance. *Id.* He used a walker. *Id.* He also testified that he had difficulty breathing, and that the combination of his pain and breathing difficulties limited his daily activities. *Id.* He cared for his two children and would mostly eat "tv dinner" meals. *Id.*

The ALJ found that, while Quincy's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements about the intensity, persistence, and limiting effects of his symptoms prior to May 19, 2023, were not entirely consistent with the medical evidence in the record. Tr. 43. The court turns next to an analysis of that finding.

The ALJ reviewed Quincy's medical documents in the record. The ALJ acknowledged that the record reflects Quincy's history of "neck and low back pain, fluid collection in the low back, and right shoulder pain" and that it documents that Quincy underwent a neck surgery approximately ten years ago. Tr. 43 (citing Tr. 532, 541). The ALJ noted that Quincy's imaging records from 2020 showed "post-operative changes at C6-7; spondylosis encroaching the spinal canal; degenerative changes; facet hypertrophy; and evidence of foraminal stenosis." *Id.* (citing Tr. 529). The ALJ also noted that later imaging during Quincy's emergency treatment in 2021 confirmed the degenerative changes in his spine and revealed

bilateral pars defects (a stress fracture) at L5 and grade 1 retrolisthesis (a slipped vertebra) of L4 on L5. Tr. 43–44 (citing Tr. 496–97, 499–500).

The ALJ noted that by December 2021, Quincy had reported only partial relief of the pain for which he had received medication and a series of transforaminal steroid injections. Tr. 44 (citing Tr. 541, 544–55, 549, 551–52, 554–55, 551–58, 562–63). Despite Quincy's reports of ongoing neck and back pain, the ALJ explained that subsequent imaging and treatment notes from January and May 2022 showed "no evidence suggesting hardware failure" and "no serious clinical deficits in the claimant's physical and neurologic presentation." *Id.* (citing Tr. 667, 694, 699, 703). The ALJ noted that subsequent imaging confirmed retrolisthesis at L4-5, with bulging annulus and hypertrophic facets, and disc desiccation at L5-S1, contributing to severe foraminal stenosis and chronic bilateral stenosis. *Id.* (citing 822–25). The ALJ also noted that a study of Quincy's cervical spine revealed multiple moderate degenerative changes, including severe foraminal stenosis. *Id.* (citing 822–25). The ALJ noted that Quincy then received epidural steroid injections at L4-5, L5-S1, and C7-T1. *Id.* (citing Tr. 838–42, 847–48). The ALJ noted that in December 2022, Quincy underwent lumbar fusion, Tr. 44 (citing Tr. 850–54), which improved Quincy's "right lower extremity pain and mild left lower extremity pain." *Id.* (citing Tr. 874–78).

The ALJ observed that Quincy submitted no further medical evidence as to his musculoskeletal system. Tr. 44. The ALJ acknowledged that Quincy was awaiting cervical decompression surgery, but the record did not contain related treatment notes. *Id.* The ALJ acknowledged that the medical evidence confirmed pathology to Quincy's cervical and lumbar spine. *Id.* On the other hand, the ALJ noted that Quincy's cardiologic treatment notes from 2023 indicated that he had an intact motor system, *id.* (citing

Tr. 944), and that his physical examinations from the alleged onset date through May 2023 were free of serious clinical defects, resulting in only conservative treatment options. *Id.* The ALJ also acknowledged that Quincy's treatment did not improve his symptoms. *Id.* The ALJ found, however, that Quincy, in the ALJ's words, "remained relatively functionable" as he retained the ability to prepare simple meals, perform light household work, drive, shop, and manage finances. *Id.* The ALJ also found that Quincy's allegation that he experienced adverse side effects from treatment was not reflected in the record. *Id.*

The ALJ also reviewed the prior administrative findings and opinions in the record. Two State Agency Medical Consultants (SAMC) reviewed Quincy's medical records and evaluated the severity of Quincy's impairments at the initial level and on reconsideration. At the initial review, the SAMC found that she could not determine the severity of Quincy's impairments or his RFC because the record contained insufficient evidence. Tr. 104–05, 113. On reconsideration, the SAMC found that Quincy retained the capacity to engage in light exertional activities. Tr. 122. The ALJ found both opinions slightly persuasive, finding that each opinion was generally consistent with the finding that Quincy did not meet the disability eligibility criteria as of the alleged onset date. Tr. 45. As for the reconsideration opinion, the ALJ found that the SAMC's finding of severe impairments was consistent with the evidence at the hearing level. *Id.* In contrast, the ALJ found inconsistent the SAMC's reconsideration opinion pertaining to Quincy's limitations on his abilities to use his extremities and to be exposed to workplace hazards. *Id.* The ALJ found that the hearing evidence supported more restrictive limitations in those areas, noting that the record showed Quincy's reports of upper and lower extremity pain, which would have limited his ability to

"kneel and balance and handle and finger with the left hand." *Id.* (citing Tr. 67–89, 419–1003).

The ALJ also considered the workers' compensation work status reports in the record. The ALJ did not assign any degree of persuasion to the reports, noting that per the regulatory provisions, opinions by other governmental agencies are inherently neither persuasive nor unpersuasive. Tr. 45; *see* 20 C.F.R. § 404.1504. The ALJ did not analyze the reports' consistency or supportability as other governmental agencies apply different rules and regulatory provisions than the SSA. Tr. 45.

The RFC was determined according to the appropriate legal framework and is supported by substantial evidence. Each of the physical limitations is supported by the record. The ALJ considered all the evidence in the record and weighed its credibility. Though Quincy testified about his impairments, the ALJ found that the objective medical evidence did not fully corroborate his testimony about the severity of his impairments. The ALJ properly considered all the objective medical evidence in the record, including Quincy's physical examinations that showed no serious clinical defects. The ALJ also properly considered the consistency and supportability of the medical opinions in the record and explained her evaluation of their persuasiveness, as is required by 20 C.F.R. § 404.1520c. The ALJ then concluded that, while the evidence showed that Quincy had physical limitations from the alleged onset date through May 19, 2023, those limitations were not as severe as Quincy asserted. These facts fully support the RFC.

Quincy does not point to a specific error in the ALJ's evidentiary or legal analysis. It appears that Quincy argues that the severity of his spinal condition was not reflected in the ALJ's RFC determination. *See* ECF No. 10 at 4. He does not, however,

explain how the ALJ's RFC analysis is flawed and presents no evidence, other than his own word, that he is more limited than the ALJ found. For example, Quincy states that he "suffered from spinal problems for many years" but does not point to medical evidence that controverts the ALJ's RFC determination. *See id.* As such, Quincy has not demonstrated that the ALJ's RFC determination was not supported by substantial evidence. The ALJ followed the proper legal rules, and her RFC determination is supported by substantial evidence.

***E. Step Four***

At step four, the ALJ determines whether the claimant can perform jobs they previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Perez*, 415 F.3d at 462. If the claimant can perform their past work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform their past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ posed a hypothetical to the VE during the hearing that contained all the limitations in the RFC that the ALJ ultimately found. Tr. 93. The VE testified that a person of the same age, education, past work history, and limitations as to Quincy could not perform his past work as a house repairer or a maintenance repairer. *Id.* Based on that testimony, the ALJ found that Quincy was unable to perform his past relevant work since January 5, 2021. Tr. 47.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and because Quincy's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-four

determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination).

This finding is supported by substantial evidence and is not in error.

### *F. Step Five*

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in significant numbers in the national economy, the claimant is not disabled. *Id.* (citing 20 C.F.R. § 404.1520(g)).

The ALJ found that Quincy could have performed work that exists in significant numbers in the national economy from January 5, 2021 through May 19, 2023. Tr. 47. As such, she found Quincy not to be disabled during that period. Tr. 48. The ALJ relied on the VE's testimony that an individual of Quincy's age, work experience, and RFC would be able to work as a furniture rental consultant, shipping or receiving weigher, or school bus monitor as of the alleged onset date through May 19, 2023. *Id.*

As was the case in step four, because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and because Quincy's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination.

Accordingly, the ALJ's findings at step five are supported by substantial evidence.

### *4. Conclusion*

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c).

Accordingly, Plaintiff's Motion for Summary Judgment, ECF No. 10, is **DENIED**. Commissioner's Motion for Summary Judgment, ECF No. 12, is **GRANTED**, and the Commissioner's final decision is **AFFIRMED**.

A separate final judgment will be entered.

Signed at Houston, Texas, on September 17, 2026.

Peter Bray
United States Magistrate Judge